UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RONNIE BARRETT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 07-250 (RCL) |
| ) | |
| **ANDRE CHREKY**, *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OPINION**

Upon consideration of defendants' Motion for Summary Judgment on all counts [45], plaintiff's Opposition [51], defendants' Reply [56], the applicable law and the record herein, for the reasons set forth below, the Motion for Summary Judgment will be **denied** as to Counts I and II and will be **granted** as to Counts V-VII and IX. Counts III, IV and VIII were voluntarily withdrawn and will be **dismissed**.

**I.     Background**

Plaintiff, Ronnie Barrett, is a former employee of the Andre Chreky Salon, who has alleged violations of the Fair Labor Standards Act of 1963 ("FLSA"), the D.C. Wage and Hour Act ("WHA"), the D.C. Wage Payment and Collection Act ("WPCA"), and the D.C. Human Rights Act ("DCHRA"), as well as common law actions for conversion, negligence, negligent supervision and breach of contract. Ms. Barrett voluntarily withdrew the claims for negligence and claims related to overtime payment. Ms. Barrett maintains allegations of sexual harassment and retaliation, as well as of wrongful termination, along with conversion and withholding of tips. Ms. Barrett filed suit in this Court on February 2, 2007. Discovery progressed in

conjunction with the related case of *Thong v. Chreky* under Magistrate Judge Kay, and defendants moved for summary judgment on September 2, 2008.

## II.     Legal Standard

When considering a motion for summary judgment, the court must take the facts in the light most favorable to the non-moving party, granting them "all justifiable inferences," and then determine if there remains a genuine issue of material fact upon which a jury could hold either way. *Dingle v. District of Columbia,* 571 F. Supp. 2d 87, 94 (D.D.C. 2008). In determining whether or not such an issue exists which could determine the outcome of the suit, the primary consideration is the substantive law on the claim. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

## III.    Discussion

### a. Sexual Harassment Claims (Counts I and II)

Ms. Barrett alleges a number of incidents of sexual harassment which, together, would amount to a hostile work environment. She alleges discrimination and retaliation under the DCHRA on the basis of these allegations. Ms. Barrett has agreed to limit her claim to economic and punitive damages, excluding emotional damages. (See Barrett Deposition at 76). Other than disputing the factual validity of the plaintiff's arguments (which is assumed for the purposes of summary judgment), the defendants have provided four main allegations against the claim: that the claims are time-barred for reasons related to the original D.C. Human Rights Office (DCHRO) claim and to a dispute over the use of the 'continuing violation' doctrine, that they are is no connection between the protected behavior and the retaliation alleged, and that Ms. Barrett

is ineligible to receive damages for back pay because she was unlicensed for most of the time between her departure from the salon and this suit. All of these arguments fail.

First, the defendants dispute Ms. Barrett's use of the "continuing violation" doctrine as a means of getting around the DC Human Rights Act's one-year statute of limitations. The basic principle of this exemption is that a pattern of behavior which creates a "hostile work environment" is, by definition, a series of interconnected actions, and to refuse to allow suit or to limit suit because some of the actions took place outside the statutory period defeats the entire purpose of this type of sexual harassment claim. This theory allows plaintiffs to sue for the entirety of a series of actions so long as they are interconnected and at least one of them fell within the statutory period. *Amtrak v. Morgan*, 536 U.S. 101 (2002). [1]

Defendants' arguments mischaracterize the law by focusing on the language of "discrete actions," which are not eligible for the "continuing violation" exemption to the statute of limitations. But as the Supreme Court's opinion in *Morgan,* the definitive case on these kinds of statutory provisions in workplace discrimination, makes clear, these types of sexual assaults which, along with constant sexual harassment, constituted a "hostile work environment" are not what the Court had in mind when it excluded "discrete actions." The Court wrote that "discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id* at 116. Other cases, in D.C. and otherwise, make clear that these kinds of events, hiring/firing or failure to promote or

---

[1] *Morgan* and others deal with Title VII as opposed to the D.C. Human Rights Act. However, as a number of D.C. cases emphasize, the standards for the two are the same, with D.C. courts consistently adopting Title VII decisions for the DCHRA. The D.C. Court of Appeals explicitly adopted the *Morgan* framework for the DCHRA in *Lively v. Flexible Packaging*, 830 A2d 874, 889 (D.C. 2003).

3

transfer, are the kinds of 'discrete acts' they had in mind, not specific punctuated events in a pattern of sexual harassment.

The continuing violation theory does depend on at least one alleged incident taking place during the statutory period, however, and defendants also dispute that the most recent alleged act really took place in the statutory period at all. While Ms. Barrett claims in her affidavit and her original DCHRO filing that the last date of discrimination occurred on November 15, 2005, her deposition testimony confused matters. When asked about times when Mr. Chreky "attempted to put his hand down [her] shirt," one of the ways she described the November 2005 incident, Ms. Barrett describes multiple incidents before the birth of her baby in 2004, including one in the summer of 2004 which is very similar to the 2005 incident. She does not describe any incident that occurred in the statutory period. The defendants argue that this is a contradiction of her affidavit and the Court should, under the 'sham affidavit' rule[2], ignore documents claiming that the incident in question occurred within the statutory period. Ms. Barrett responds by pointing out that she at no time said that these were the *only* times Mr. Chreky behaved in this manner and that she had simply forgotten, in that moment, the most recent incident.

In 'sham affidavit' cases, however, the deposition testimony *directly* contradicted a single affidavit upon which an element was based. Here, however, the 'contradiction' is an inference drawn by the defendants which the plaintiff denies and rebuts with hern interpretation, namely that Ms. Barrett simply forgot about the final incident, in that moment in the deposition, but was not testifying that it did not happen. The defendants may scoff at the possibility that Ms. Barrett simply 'forgot' about this 'key' element, but at no point did she directly contradict herself. Defendants also fail to deal with the fact that multiple documents, including the original DCHRO

---

[2] The 'sham affidavit rule' in the D.C. Circuit is clearly stated in *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007).

4

filing, identify an incident on November 15 as being the most recent one but do not clearly indicate what took place that day. The fact that one description of an incident on November 15 might have been a mistake in dates does not mean that there was *no* incident on November 15, which would be necessary to completely toss-out that element and with it much of the harassment claim.

There is also a dispute over whether the date of that filing, November 8, 2006, is the beginning of the statutory period or whether the date on which the claim was *docketed* (December 19) is the more relevant date. While both Ms. Barrett and the defendants cite to *Federal Express v. Holowecki,* in which the Supreme Court ruled that the latter of two competing statutory dates applied, the case is of questionable relevance here. While Title VII cases are often incorporated into DCHRA precedent, *Holowecki* dealt with the Age Discrimination in Employment Act (ADEA). As the defendants point out, the Court based much of its decision on specifics of EEOC policy and statements, as well as the statutory language of the ADEA.

The most compelling relation between this case and *Holowecki* is that, in both cases, the relevant administrative body sided with the plaintiff in claiming the earlier date as the beginning of the statutory period. While the defendants are correct that the statement by the EEOC was more formal in *Holowecki* than here, the DCHRO nonetheless did issue a statement to plaintiff's counsel and authorize him to include it in a declaration. Ms. Little, counsel for the DCHRO, informed Mr. Wickenfield, counsel for Ms. Barrett, that the DCHRO deemed Ms. Barrett's complaint filed on November 8, 2006 and confirmed that it is that date and not the docketing date which is relevant for the statutory period. This Court takes the DCHRO's determination as persuasive authority and adopts this interpretation.

Another timeliness argument made by the defendants is over the original DCHRO filing, which lists 'constructive discharge' as the grounds for relief. It was not until January of 2007 that Ms. Barrett 'amended' her complaint to one of termination rather than constructive discharge. Defendants argue that, in contrast to pleading in the alternative, a plaintiff cannot *amend* a complaint in order to make a new claim based on different facts; Ms. Barrett was either constructively discharged or she was fired, she could not have been both. Ms. Barrett argues that constructive discharge and termination are simply different theories of the case rather than different claims; the question is whether Mr. Chreky was responsible for her departure, not whether or not he said the words "you're fired" or simply forced her to quit.

Defendants cite to a number of cases where an amendment was barred as being too distinct from the original claim, meaning it "significantly alters the nature of the proceeding by injecting new and unanticipated claims." *United States v. Hicks*, 283 F.3d 380, 388 (D.C. 2002). The change from constructive discharge to termination is not significant enough to alter the nature of the proceeding here to warrant summary judgment or dismissal, since it involves simply a relatively minor difference in the arguments used in support of and in opposition to the claim.

Another attack defendants make on Ms. Barrett's claim relates to the causal link between the protected behavior (refusal of sexual advances) and the alleged retaliation, namely the termination and the 'book-blocking'[3]. While a retaliation claim does require some type of connection between the protected behavior and the alleged retaliation, this burden is not a heavy one at this stage. As the D.C. Circuit wrote in 2001, "the initial burden is not great, as the

---

[3] "Book-blocking" in salon vernacular is the practice of moving clients from one employee to others and barring receptionists from assigning new clients to that employee. While employees paid by the hour or on a salary do not have their paychecks affected by such a response, it does affect their ability to build-up a clientele, to demonstrate ability and to augment their earning with tips, which can only come from clients.

plaintiff need only establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small,* 271 F. 3d 285, 299 (D.C. Cir. 2001) (citing *McKenna v. Weinberger,* 729 F. 2d 783, 790 (D.C. Cir. 1984)). Ms. Barrett has met that threshold. The defendants are correct, however, that the some of the alleged incidents of harassment are not independently relevant except insofar as they are relevant to the alleged retaliatory actions, because Ms. Barrett has provided no evidence of economic harm as a result of them.

Under the *McDonnell Douglas* framework, in order to make a retaliation claim, Ms. Barrett must first establish a *prima facie* case, at which point the burden shifts to the defendants to show a lawful justification for the behavior.; if the defendants meet that burden, then Ms. Barrett must show that this justification is a pretext for unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). Here, Ms. Barrett has given reason to believe that her protected behavior, rebuffing Mr. Chreky's alleged advances, was the cause for retaliatory "book-blocking", as well as the termination itself. Defendants argue that the latter was in fact a result of Ms. Barrett's refusal to leave the salon when ordered to do so after clocking out for the day. Ms. Barrett has presented evidence, namely that no other employees were disciplined for the incident and far more serious infractions, such as D.U.I. arrests and showing-up drunk and hung-over, are not so severely punished, which is enough to make the question of pretext one for the jury,.

Defendants have also pointed to the fact that Ms. Barrett's cosmetology license in the District expired shortly after her departure from the salon and was not successfully renewed until 2008 as grounds for the denial of back-pay. They argue that she is ineligible for compensation for a job which she was not legally permitted to perform. Ms. Barrett cited numerous cases, however, which make clear that Mr. Chreky is ineligible to present this defense to back-pay

damages for any time in which he himself used unlicensed workers and, therefore, Ms. Barrett would have been able to continue earning her salary had she remained at the salon. Given the great deal of evidence Ms. Barrett has brought forward as to possible longstanding licensing violations at the salon, her request for back-pay damages remains in the suit and it will be for a jury to decide the amount of those damages. Defendants' motion for summary judgment on Ms. Barrett's sexual harassment and retaliation claims (Counts I and II) is **denied**.

    b. **Overtime Claims (Counts III and IV)**

These counts were voluntarily withdrawn and are **dismissed**. (See Barrett Deposition at 75)

    c. **Conversion and Tip Withholding Claims (Counts V and VI)**

While Ms. Barrett has produced a great deal of evidence as to the belief of many salon stylists and other employees that tips went missing and their belief that Mr. Chreky might be at least partially responsible, she has produced no evidence upon which a reasonable jury could find that Mr. Chreky did, in fact, take those tips. Ms. Barrett has also failed to provide this Court with any reasonable basis upon which a jury could determine damages on this claim. This is due in part to a failure on Mr. Chreky's to keep detailed records, but it is also due to Ms. Barrett's failure to keep her own records of 'expected' tips to be compared to the tips she actually reported. While she correctly points to *Story Parchment v. Paterson Parchment Paper Co.* as showing a hesitation on the part of courts to use a lack of records against the employee in an under-compensation claim, she fails to provide support for the argument that the claim should go forward without *any* basis for determining the extent of the under-compensation. Ms. Barrett has not provided "evidence [that] show[s] the extent of the damages as a matter of just and reasonable inference," and is instead far closer to the Court's hypothetical case of basing

damages on "mere speculation or guess." *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562 (1931). She also points to *Bigelow v. RKO Radio Pictures* in support of the idea that when the defendant is responsible for the inability to calculate damages, courts should be wary of letting a defendant off the hook for lack of evidence. But that Court also said that "even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork." *Bigelow v. RKO Radio Pictures, Inc.,* 327 U.S. 251, 263 (1946). This Court is not insensitive to the concerns of a plaintiff who may have a valid claim but is unable to show damages as a result of a lack of records, but it is also unable to allow a claim based purely on speculation to go forward. Defendants' motion for summary judgment on Ms. Barrett's conversion and tip-withholding claims (Counts V and VI) is **granted**.

### d. Negligent Supervision Claim (Count VII)

Ms. Barrett filed this claim against defendant Andre Chreky Inc. (ACI) for failing to supervise Mr. Chreky in the conduct of business on their premises and at their salon. This claim is subsidiary and dependent on the DCHRA claims discussed above. However, as defendants point out in their summary judgment motion, there is no doctrine of negligent supervision under the DCHRA. *Griffin v. Acacia Life Ins. Co.* 925 A. 2d. 564, 575 (D.C. 2007). Ms. Barrett had no response in her opposition to summary judgment, so defendants' motion for summary judgment on Count VII is **granted**.

### e. Negligence Claim (Count VIII)

This count was voluntarily withdrawn and is **dismissed**. (See Barrett Deposition at 75)

### f. Breach of Contract (Count IX)

Ms. Barrett filed this claim against defendant ACI for breach of contract for failing to pay her $2,100 a week at the beginning of her employment and for failing to grant her a review after three months of employment. Ms. Barrett claims that she and Mr. Chreky entered into a binding employment contract during negotiations in late summer 2003, which Mr. Chreky violated by paying her an hourly wage and not reviewing her performance. Defendants argue that Ms. Barrett was actually an at-will employee and that the lack of a written employment contract, along with Ms. Barrett's continued work and acceptance of payment, prevents her from making a valid breach of contract claim against ACI. Ms. Barrett had no response in her opposition to summary judgment, so defendants' motion for summary judgment on Count IX is **granted**.

### IV. Conclusion

For the foregoing reasons, this 13th day of July, 2009,

The Motion for Summary Judgment [45] will be **GRANTED** on Counts V-VII, and IX, and these claims will be **DISMISSED**.

The parties have agreed to dismissal of Counts III, IV and VII, and those will be **DISMISSED**.

Since defendant SPAC, LLC is made a defendant with respect only to Count VII, and that claim will be **DISMISSED** on the consent of the parties, defendant SPAC, LLC will be dismissed as a party from this matter.

The Motion for Summary Judgment [45] will be **DENIED** on Counts I and II.

A separate order shall issue this date.

Signed by Royce C. Lamberth, United States District Judge, on July 13, 2009.